## COCHRAN v. LINVILLE IMPROVEMENT COMPANY.

### (December 19, 1900.)

1. *Referees—Findings of Fact—Appeal.*

   Findings of fact by a referee, under a consent reference, are final and can not be reviewed on appeal, unless based upon incompetent evidence.

2. *Adverse Possession—Vendor and Purchaser.*

   The possession of a vendee of a part of a tract of land extends no farther than the boundaries in his deed so as to enure to the benefit of the vendor of the entire tract.

3. *Adverse Possession—Lessor—Lessee.*

   Where a person enters as lessee a certain part of a tract of land, covered by a deed, under which his lessor claims, his possession enures to the benefit of the lessor, to the outside limits of the deed of the latter.

4. *Acknowledgment—Probate—Power of Attorney—Deed—Principal and Agent.*

   Where a power of attorney appears to be regular and authorizes an acknowledgment of a deed, a probate under such authority will be presumed to be regular, nothing appearing to the contrary.

5. *Deed—Probate—Presumption—Collateral Attack.*

   The probate of a deed is a judicial act and is presumed to be correct until the contrary appears, and can not be collaterally impeached.

6. *Deeds—Probate—Presumption.*

   Probate of a deed will be presumed to be regular from the fact of registration.

7. *Deed—Registration—Presumption.*

   The registration of a deed is presumed to be correct.

8. *Deed—Probate—Presumption.*

> The probate of a deed will be presumed from the fact that it is registered.

9. *Deed—Probate—Registration.*

> It is not necessary to register the certificate or evidence of probate.

CIVIL ACTION by Arthur E. Cochran, Sallie Riche, J. C. Hamilton and wife Carrie, Eloise Jones and J. D. Jones, R. M. Caruth, H. M. McGinsey, James Cochran, and Willie Lou Cochran, the two last suing by their next friend Arthur E. Cochran, against The Linville Improvement Company, S. T. Kelsey, C. H. Nimson, heard by Judge *O. H. Allen,* at August Term, 1899, of McDOWELL Superior Court. From a judgment in favor of defendants, entered on the report of the referee, both parties appealed.

*E. J. Justice, D. W. Robinson,* and *Davidson, Jones & Adicks,* for the plaintiffs.

*Chas. A. Moore,* and *M. H. Justice,* for the defendants.

FURCHES, J.   On the 14th day of July, 1795, the State of North Carolina granted to William Tate and William Cochran 100,640 acres of land, lying and being in the county of Burke.   The plaintiffs are heirs-at-law of William Cochran, and claim under this grant of July 14, 1795.   The defendants admit that they are in possession of a part of the land covered by the grant to Tate and Cochran, but deny that plaintiffs are the owners of said land, or that they are entitled to possession of same, or any part thereof.   The defendants say that plaintiffs acquired and took no title under said grant, for the want of proper registration, but, if any title passed under said grant to the grantees therein named,

that said grantees, Tate and Cochran, soon thereafter, to-wit, on the 17th day of December, 1796, bargained, sold, and conveyed the same to William Constable, and that neither Tate nor Cochran, nor the plaintiffs, who claim as the heirs of Cochran, have owned any part or interest in said land since the date of said deed to William Constable. The defendants further allege and say that, while said grant was made to William Tate and William Cochran, in fact they were only the absolute owners of one-half thereof, and trustees of Thomas Buchell and Andrew Baird of the other undivided one-half of said land, and that on the 12th day of March, 1796, the said William Tate, William Cochran, and Thomas Buchell, made and executed their deed to Andrew Baird for one-fourth of said land, in which they set forth fully and in detail the fact that the money used to procure said grant was furnished in equal parts by the said Baird, Buchell, Cochran and Tate, and that, while the grant was issued to Tate and Cochran, Baird and Buchell were equally interested in said land with them, and that they held one undivided fourth thereof in trust for said Baird, and one undivided fourth thereof in trust for said Buchell. The defendants further allege and say that on the same day that Tate, Cochran, and Buchell conveyed the undivided one-fourth of said land to Andrew Baird, to-wit, on the 12th day of March, 1796, said Baird sold and conveyed the same to William Constable. The defendants further allege that on the 20th day of July, 1796, the State of North Carolina granted to William Cathcart 59,000 acres of land in the county of Burke; that this grant was located on the land embraced within the boundaries of the grant to Tate and Cochran; that defendants are the owners of this Cathcart grant, and have been in possession of the same, through their lessees, bargainees, and tenants, for fifty years or more; and that their said title, though it

may have been once defective, is thus ripened into a good, perfect, and indefeasible title to all the lands covered by the Cathcart grant.

While there were a number of other questions raised by the exceptions of plaintiffs, the case depends upon the correctness of the findings and rulings of the referee and of the Court upon the admission of the deeds of Tate and Cochran to Constable, and the deed from Tate, Cochran, and Buchell, to Baird, and the possession of defendants, claiming under the Cathcart grant of 59,000 acres. The case, by consent of parties, was referred to Judge Burwell, who took and considered the evidence, and made a report, finding the facts, and declaring the law arising thereon. This report was in favor of the defendants upon the disputed facts, and upon the law based thereon, and plaintiffs excepted. The reference being by consent of the parties, the facts found by the referee are final, and we have no right to review these findings, unless they shall appear to have been found without any competent evidence to support them. *Morrison v. Baker,* 81 N. C., 76; *Holt v. Couch,* 125 N. C., 456. If found upon incompetent evidence, the finding would be erroneous; and, if there is no competent evidence upon which to base the finding, such finding may be reversed by this Court, and such error pointed out.

We will consider first the Cathcart grant. It was contended by defendants, and not denied by plaintiffs, that there are now 500 (and probably more) settlements upon the land embraced in the Cathcart grant, holding and claiming their title under said grant and *mesne* conveyances from the defendants and those under whom they claim. The plaintiffs admit that many of these titles may have ripened by possession, as against them, but, if so, that their possession would not inure to the benefit of the defendants; that their posses-

sion only extended to the boundary lines of such purchases.
This position of plaintiffs seems to be correct. *Ruffin v.
Overby,* 105 N. C., 78; *Worth v. Simmons,* 121 N. C., 361.
But the referee found that outside of these conveyances,
which only extended possession to their own boundary line,
the defendants had held adverse possession of the land em-
braced in the Cathcart grant for more than seven years. We
can not review this finding of fact, and it must stand as true,
if there was any evidence to base such finding upon. For
the purpose of showing adverse possession, the defendants
offered in evidence a lease from them to Abram Johnson,
dated September 7, 1838, of the whole 59,000 acres con-
tained in the Cathcart grant, lying in the county of Yancey.
The defendants then offered evidence tending to show that
said Johnson entered upon said land as the lessee and tenant
of defendants, made a settlement thereon, and remained
upon said land as such tenant for twenty years or more, and
certainly for a longer time than seven years; that he settled
upon said land under said lease, cleared land, built an iron
forge, dug ore at different points on said land, cleared land,
and cut wood for coaling purposes at his forge. It was
shown that defendants contracted to sell to said Johnson 300
acres of land where he settled, which was never conveyed to
him, but was afterwards sold and conveyed to a son of said
Abram Johnson, but said Johnson still continued to hold
under said lease as defendants' lessee and tenant, and to dig
ore, cut cord-wood, and to clear land. The plaintiffs con-
tended that the point where Johnson dug ore was not on the
Cathcart land, and, to determine this question, it became
material to locate a former grant to Reuben White; plaintiffs
contending that the Reuben White grant was west of the
Cathcart boundary, while defendants contended that it was
within the Cathcart boundary. The referee found it to be

within the Cathcart boundary. And as this seemed to be considered a crucial point in the case, as to adverse possession, we have examined it with care, and agree with the commissioner that it is within the Cathcart boundary. How far from the outside boundary, we are unable to say, as these boundaries are so large, but a considerable distance—a mile or more. This seems plain to us, as we find a grant to "Waightstill Avery, dated the 16th day of December, 1793, on Cranberry creek, between his own and Reuben White's survey, beginning at three chestnut trees, runs west, with his own line, crossing Cranberry creek, 33 chains and 30 links, to a stake; thence south 30 chains to a white-oak; thence east, with Reuben White's line, crossing both forks of the creek, 33 chains and 33 links, to a chestnut tree; thence north to the beginning." The map shows this survey as crossing Cranberry creek, in its first and third calls; the third call being, "with Reuben White's line." No other grant of said Avery crosses Cranberry creek, running south and north, as this does. And if the question of adverse possession depends upon the location of the Reuben White grant, as seemed to be contended by counsel, we do not only think there was some evidence to support the finding of the commissioner, but, to our minds, it was full and satisfactory. But it seems to us that there were other acts of Johnson, taken in connection with this lease, that were sufficient to constitute adverse possession. The plaintiffs contended that these acts of Johnson were simply trespasses, and did not constitute adverse possession. And it is true that some of them might not have amounted to more than trespasses, if Johnson had not had color of title, under which he entered and occupied said land; that is, a lease from the defendants.

We therefore sustain the finding that defendants had held the Cathcart land under color of title for more than seven

years, which perfected their title, if it was before imperfect. But as the Cathcart grant may not cover all the land of which the defendants have possession, and which is claimed by plaintiffs under the grant to Tate and Cochran, we proceed to consider the other principal question presented by the appeal: If Tate and Cochran had conveyed all the estate they had in the land embraced in the grant to them of the 14th of July, 1795, to Constable and Baird, as contended by defendants, the plaintiffs have no title to support their action, and it must fall.   If the plaintiffs recover, they must do so upon the strength of their title, and not upon the weakness of defendants' title.   This question depends upon the competency —the admissibility— of the deed from Tate and Cochran to Constable, and the deed from Tate, Cochran, and Buchell to Baird.   If these deeds are competent testimony, the plaintiffs have no title.

It is shown in evidence that the register's books were taken from the register's office in Morganton by the Federal army in 1864, and thrown in a tan vat at a tan yard near Morganton; that said books were thereby greatly mutilated and damaged, and many of them defaced and destroyed; that diligent examination has been made through those not destroyed, and these deeds can not be found.   Upon this proof, the defendants offered certified copies of said deeds, but they were objected to by plaintiffs.   The copy offered purporting to be a deed from Tate and Cochran to Constable, bearing date of 17th December, 1796, has the names attached of William Tate (seal), and William Cochran (seal), with the following evidence of its execution, probate, and registration:

"Signed, sealed, and delivered, in the presence of Tench Coxe, Ann Coxe, Rebecca Coxe."

"Acknowledged in open court by William Tate, and also by William Tate by virtue of power of attorney from Wil-

liam Cochran, now filed April Term, 1797. W. W. Erwin, D. C.

"Registered by William Walton, C. R., 19th May, 1797."

"State of North Carolina, Burke County. I, Thomas Walton, register of said county, do hereby certify that the within and above is a true copy of a deed, William Tate and William Cochran to William Constable, as appears on record in Book No. 7, page 543. Certify, this 15th May, 1859. Thomas Walton, C. R."

The defendants then proved the signature of Thomas Walton upon said copy to be his genuine handwriting and signature, and that he was register of deeds of Burke County; and, there being no evidence by plaintiffs in rebuttal, the commissioner allowed the copy to be offered as evidence. The plaintiffs, among other grounds, object for the reason that it appears that William Tate, under a power of attorney, acknowledged the deed of William Cochran. But if the power of attorney was regular, and authorized Tate to acknowledge the deed, it was sufficient. 1 Am. and Eng. Enc. Law (2d Ed.), 508. And, as there is nothing to show but what it was in all things regular, it will be presumed that it was, as this was a judicial act, and everything is presumed to have been regular, under the maxim, *"Omnia praesumuntur,"* etc. If there was no error in allowing this evidence, it proves that plaintiffs have no title to three-fourths of the land embraced in the grant of 1795 under which they claim. This is an important question, and one that seems not to have been decided by this Court, though we have many decisions bearing more or less directly upon it. It has been a long time since this deed was registered—more than one hundred years. In the course of nature, we must know that no one is now living who was living in 1796 and 1797. By the fluctuations and vicissitudes of time, the original deed is

lost, or its whereabouts unknown to defendants. And, if they had it, no one is now living by whom it could be proved for registration. And if a preserved copy, certified to by the public register of Burke County, can not serve the defendants (the original registry being destroyed), the defendants would seem to be without protection against the plaintiffs, who have slept upon their rights, if they had any, for 100 years. It may be that, if they had asserted this claim seventy-five or even fifty years ago, the execution of this deed might have been established by living witnesses. While the Court must have inherent evidence of the truth of the matter to be proved, when it has this it will be presumed that all matters were regular that are necessary to establish the facts, and cast the burden of disproving them, or of rebutting this presumption, upon the other side. And the great length of time will be taken into account in raising this presumption, as well as of the destruction of the records. *Morris v. House,* 125 N. C., 550; *Sledge v. Elliott,* 116 N. C., 717. We have in this case evidence from the register's books of Burke County, a certified copy made by a public officer (the Register of Deeds) more than forty years ago. This copy gives the deed—every word of it—and, if it was properly proved, it is made competent evidence by our statute (sec. 1261 of The Code). The question, then, is, was this deed properly proved? The entry on the docket, or the certificate of the Clerk or Judge, is not the proof or acknowledgment of a deed. It is a memorial or evidence of the fact that it was proved or acknowledged as provided by law for perpetuating the fact that the deed was proved or acknowledged. *Starke v. Etheridge,* 71 N. C., 240. And the usual way of showing that a deed has been proved or acknowledged, where the trial is not in the county where the probate was taken, is by the certificate of the Clerk. Here we have the certifi-

cate of the Clerk that this deed was "acknowledged in open court" by "W. W. Erwin, D. C.," which, we suppose, means Deputy Clerk. It is true that this does not appear in the handwriting of W. W. Erwin, as it is a copy; and, if it was in his handwriting, it could not be proved now, after more than one hundred years. But it would be presumed that it was written by him, because it had his name and insignia of office. If the Clerk of Burke Superior Court were to give such a certificate now, he could do no more, because he would not know the handwriting and signature of W. W. Erwin, or of the Clerk, a hundred years ago. Then we have the Clerk's certificate of this probate given to us by William Walton in his official capacity as "C. R." County Register), and certified to by Thomas Walton, "C. R." (County Register), on the 15th of May, 1859. These men (William Walton, in making this entry, and Thomas Walton, in making this certificate), were acting in their official capacity, and the law presumes that these entries and this certificate are correct. But it is shown by T. G. Walton that Thomas Walton was register in 1859, and that the certificate on the copy of the deed of Tate and Cochran to Constable is his genuine handwriting and signature. This entry states that the acknowledgment was in open court at April Term, 1797. This must have been done in the County Court of Pleas and Quarter Sessions, as there was no other court at that time that indicated its terms by the month in which it was held. The terms of the Superior Courts were designated as Spring and Fall Terms. And, besides, the Superior Court, as a Court, had no jurisdiction of the probate of deeds. The County Court had this jurisdiction when in session, in open court, as it seems this deed was probated.

But it is objected by plaintiffs that the Deputy Clerk could not take the probate of deeds. This is true. Neither could

the Clerk of the Court at that time take the probate of a
deed, but it was done in open court, and by the Court.    The
deputy, W. W. Erwin, did not take the probate of this deed,
but only certified to the register that it had been proved in
open court.    We see no objection to his doing this, and if
the original deed had been offered in evidence, with this
certificate upon it, or the original registry of this deed had
not been destroyed, we must think it would have been admis-
sible ·evidence.    *Perry v. Bragg,* 111 N. C., 163.    The
probate of a deed is held to be a judicial act—a judg-
ment of the Court—and not only presumed to be correct un-
til the contrary appears, but that it can not be collaterally
impeached.    *Davis v. Blevins,* 123 N. C., 379 ; *White v. Con-
nelly,* 105 N. C., 65 ; *Perry v. Bragg, supra,* involved a ques-
tion of probate and registration of a deed, growing out of
the Clerk's certificate; and the Court held that there was
no statute at that time of the probate and registration of that
deed requiring the certificate of probate to be registered; cit-
ing and approving *Freeman v. Hatley,* 48 N. C., 515.    In
*Starke v. Etheridge,* 71 N. C., 240, BYNUM, J., delivering
the opinion of the Court, says:    "But, assuming that some
written memorial of the fact of probate is necessary, it still
appears that at the time of probate the officer who took it
did indicate his official act by indorsing upon the deed the
word 'jurat' (*juratur*), the primary meaning of which is
'sworn,' but the derivative signification is 'proved.'    In sup-
port of the deed, *'Ut res magis valeat quam pereat.'*    Such
an indorsement upon an instrument in all respects regularly·
executed and *bona fide,* will be held sufficient compliance with
the law."    In *Howell v. Ray,* 92 N. C., 510, the case of
*Starke v. Etheridge* is cited with approval, and the Court
further holds that "the presumption of rightfulness of what
was done" is strengthened by the oral evidence.    *Starke v.*

*Etheridge* is also cited with approval in *Quinnerly v. Quinnerly,* 114 N. C., 145, where it is held that "where the certificate of the probate court did not state that the execution of the mortgage had been acknowledged by the grantor or proved by the witness, but merely recited that 'the mortgagee had procured the same to be proved by the Clerk,' the presumption is that the probate was properly taken." The case of *Strickland v. Draughan,* 88 N. C., 315, is almost the case under consideration. It was an action for possession of land, and the principal question was the competency of a copy of a deed offered in evidence by the plaintiff. The only evidence of its probate was the following entry made on said copy: "Sampson County, August Term, 1812. Then was the above deed acknowledged in court for registration. H. Holmes, C. C." The defendant objected and appealed, but the ruling of the Judge in admitting this copy was affirmed; and the Court, in rendering its opinion, said: "Indeed, there was no necessity for any other evidence of probate, or registration, than such as was contained in the copy certified from the books of registry of deeds. The statute in express terms declares that the registry or duly certified copy of the record of any deed, power of attorney, or other instrument required or allowed to be registered or recorded, may be given in evidence in any court." In this case we have everything that the plaintiff had in that case. We have a certified copy from the register's office. The plaintiff in that case had a certified copy of the deed from the register's office, with certificate indorsed thereon, not as full and complete as the one in this case; and the Court says that it is all that was needed. The case of *Darden v. Steamboat Co.,* 107 N. C., 437, is very much to the same effect. From the "reason of the thing," as well as from the authorities cited, we are of the opinion that the copy of the

deed from Tate and Cochran to Constable was properly admitted in evidence.

We do not propose to devote a separate discussion of the deed from Tate, Cochran, and Buchell to Baird, as we think the argument and authorities cited in the discussion of the deed from Tate and Cochran to Constable apply and dispose of the execution of the deed to Baird, though, as there was some difference in the execution and probate of the two deeds, they could not be treated together. In this deed we have a certified copy from the registration books of Burke County, certified to by Thomas Walton, on the 14th day of May, 1859; the only difference between the two being that on the registry this entry appears: "Signed, sealed, and delivered in presence of W. H. Williams, James Murphy, B. Collins." "Enrolled in register's office the 18th March, 1796. William Walton, C. R.," followed by a similar certificate from Thomas Walton, as that in the case of the deed from Tate and Cochran to Constable. And it appears that, on the same day this deed bears date (the 12th of March, 1796), Andrew Baird made a deed to said Constable, conveying to him one undivided fourth in the land embraced in the grant to Tate and Cochran, witnessed by W. H. Williams, one of the witnesses to the deed of Tate, Cochran, and Buchell to Baird. It is said in *Starke v. Etheridge, supra,* that the entry on the record is not the probate of the instrument, but only a memorial of the fact, and, if it be necessary that there should be some written *indicia* made at the time, it appears in that case by the word *"jurat,"* not deciding that it was an indispensable requisite, but the inference is that it was not. It is held in *Howell v. Ray, supra,* that it must be presumed from the fact of registration that the deed was properly proved, nothing to the contrary appearing. And it must be presumed that the deed was properly put on the registry, until the contrary is shown.

*Strickland v. Draughan,* 88 N. C., 317; *Love's Ex'rs v. Harbin,* 87 N. C., 249. The probate will be presumed from the fact that the deed was registered. *Tatom v. White,* 95 N. C., 455. And the probate need not be registered. *Perry v. Bragg, Love's Ex'rs v. Harbin, Starke v. Etheridge,* and *Freeman v. Hatley, supra.*

From the facts and circumstances of this case, the great length of time since the date of this deed and its registration; the fact that in December, 1796, eight or nine months after the date and registration of this deed from Tate, Cochran, and Buchell to Baird, Tate and Cochran conveyed to Constable their undivided three-fourths in said land, and the presumption arising in favor of its regular probate from the fact of registration (nothing appearing to rebut such presumption, but all the circumstances going to sustain this presumption); and the fact that it is not necessary to register the certificate or evidence of probate, we must hold that this deed was properly admitted in evidence, and sustain the ruling of the commissioner and the Court below, and affirm the judgment appealed from. "Let the tail go with the hide."

Affirmed.

### DEFENDANT'S APPEAL.

We are of opinion that the copy of the grant to Tate and Cochran was properly allowed as evidence, and that defendants' exception thereto is not sustained. Neither do we think the defendant's other exceptions can be sustained. But defendant's exceptions become immaterial, as we have affirmed the judgment appealed from, in the plaintiffs' appeal. The parties will be taxed with the costs proper in their respective appeals. The cost of printing transcript of record will be divided equally between the parties.

Affirmed.