NATIONAL BANK OF GOLDSBORO et al. v. HILL.

In re WAYNE FURNITURE CO.

(District Court, E. D. North Carolina. September 23, 1915.)

No. 365.

1. ACKNOWLEDGMENT ⬡═29—CORPORATE DEED—RECORDING—STATUTORY PROVISIONS—"SUFFICIENT IN LAW."

Revisal N. C. 1905, § 1005, providing that the forms of probate for deeds and other conveyances executed by a corporation, therein set forth, shall be deemed sufficient, but shall not exclude "other forms of probate which would be deemed sufficient in law," can only refer to forms of probate deemed sufficient by the common law, under which a certificate, showing that the officer whose duty it was to affix the seal acknowledged that he did so, is sufficient.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 151–159; Dec. Dig. ⬡═29.]

2. DEEDS ⬡═83—RECORDING—AUTHORITY OF REGISTER.

In North Carolina, the only authority which the register has for registering a deed is the certificate and order of the probating officer.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 218–221; Dec. Dig. ⬡═83.]

⬡═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. ACKNOWLEDGMENT ⊙⇒29—RECORDING—PROOF—CLERK'S CERTIFICATE.

Revisal N. C. 1905, § 999, provides that, whenever the proof or acknowledgment of the execution of any instrument required or permitted to be registered is had before any other officer than the clerk or deputy clerk of the superior court, such clerk or deputy clerk shall, before it is registered, examine the certificates of proof or acknowledgment, and if it shall appear that the instrument has been duly proved or acknowledged, and that the certificate or certificates to that effect are in due form, he shall so adjudge and order the instrument registered, together with the certificates. A corporate deed of trust was executed by the trustee, as well as the corporation, and bore a notary's certificate of proof of the trustee's execution, and a certificate of the clerk that the instrument had been duly proved, "as appears from the foregoing seals and certificates, which are adjudged to be in due form and according to law," but no certificate as to the proof of execution by the corporation was attached. *Held*, that the clerk's certificate was invalid, and did not entitle the deed to registration, as it was substantially in the form prescribed by section 999, and it was manifest that the clerk was simply passing upon the sufficiency of the notary's certificate.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 151–159; Dec. Dig. ⊙⇒29.]

4. MORTGAGES ⊙⇒56—DEEDS OF TRUST—NECESSITY OF EXECUTION BY TRUSTEE.

It was not essential to the validity of a deed of trust that it should be executed by the trustee, as the acceptance of the trust would be presumed, or, if not accepted, another trustee appointed.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 145; Dec. Dig. ⊙⇒56.]

5. ACKNOWLEDGMENT ⊙⇒29—RECORDING DEED—PROOF—CLERK'S CERTIFICATE.

The statutes of North Carolina require, as the method of authentication and warrant to the register to record a deed, that a certificate complying substantially with the terms of the statute shall be attached to or indorsed upon the deed, even though probate is had before the clerk of the superior court, and where no sufficient certificate was attached to or indorsed upon an instrument, it could not be shown by parol that proper proof was made before the clerk.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 151–159; Dec. Dig. ⊙⇒29.]

6. MORTGAGES ⊙⇒171—VENDOR AND PURCHASER ⊙⇒231—UNWARRANTED RECORDING.

Where the execution of a corporate deed of trust was not proved as the statute required, its registration was without warrant or authority of law, and as against creditors and purchasers for value it was not registered until subsequently probated in proper form and again registered.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 392, 394–409; Dec. Dig. ⊙⇒171; Vendor and Purchaser, Cent. Dig. §§ 487, 513–539; Dec. Dig. ⊙⇒231.]

7. MORTGAGES ⊙⇒171—VENDOR AND PURCHASER ⊙⇒231—RECORDING OF DEEDS—STATUTORY PROVISIONS.

The probate and registration of deeds and mortgages is entirely statutory, and creditors and purchasers are entitled to rely upon at least a substantial compliance with the statute.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 392, 394–409; Dec. Dig. ⊙⇒171; Vendor and Purchaser, Cent. Dig. §§ 487, 513–539; Dec. Dig. ⊙⇒231.]

8. MORTGAGES ⊙⇒171—EFFECT OF RECORDING—RIGHTS OF CREDITORS.

Under Revisal N. C. 1905, § 982, providing that no deed of trust or mortgage shall be valid as against creditors or purchasers for a valuable consideration, but from the registration thereof, a deed or mortgage is

valid as against general creditors from its registration, unless they have secured a specific lien on the property.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 392, 394–409; Dec. Dig. ☜171.]

9. BANKRUPTCY ☜181—LIENS—RIGHTS OF TRUSTEE.

Bankr. Act July 1, 1898, c. 541, § 67d, 30 Stat. 564 (Comp. St. 1913, § 9651), provides that liens given or accepted in good faith, and not in contemplation of or in fraud upon that act, and for a present consideration, which have been recorded according to law, if record thereof was necessary to impart notice, shall not to the extent of such present consideration, be affected by that act. A corporation executed a deed of trust to secure a number of bonds, and such deed of trust was registered, but was not probated in such form as to entitle it to registration. The bonds were delivered to various parties more than four months before bankruptcy. There was no suggestion that the bonds or deed of trust were executed with any fraudulent purpose, or that the deed was withheld from registration for any such purpose. Within four months before bankruptcy the deed of trust was properly probated and again registered. *Held* that, in so far as the delivery of the bonds were based upon a present consideration, the deed of trust was, as against the trustee in bankruptcy, a valid lien at the date upon which his title accrued.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 271, 273, 274; Dec. Dig. ☜181.]

10. BANKRUPTCY ☜181—LIENS—RIGHTS OF TRUSTEE.

A bank held notes for $1,500 upon which a corporation was liable, secured by accounts deposited as collateral. For the purpose of enlarging its business, the corporation issued bonds and executed a deed of trust to secure them. The bank agreed to and did loan the corporation $5,000 on its note secured by a deposit of 10 of such bonds; it being also agreed that from the amount of the loan the old notes would be paid. The old notes were paid, and the balance of the loan was drawn out by the corporation in the ordinary course of business. All parties regarded the corporation as solvent, and had no thought of securing a preference or other advantage over creditors, and supposed that the deed of trust had been probated and registered, though it was not in fact properly registered until within four months before bankruptcy. *Held* that, within Bankr. Act, § 67d, the bank paid a present consideration for the note and bonds to the extent of $5,000, the full value of the bonds.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 271, 273, 274; Dec. Dig. ☜181.]

11. BANKRUPTCY ☜181—LIENS—RIGHTS OF TRUSTEE.

Within Bankr. Act, § 67d, corporate bonds, secured by a deed of trust delivered to creditors of the corporation as additional security for preexisting debts, were not delivered upon a present consideration.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 271, 273, 274; Dec. Dig. ☜181.]

In Equity. Bill by the National Bank of Goldsboro, trustee, and others, against E. W. Hill, trustee of the Wayne Furniture Company, bankrupt, for the recovery of the proceeds of the property of the bankrupt in the possession of the trustee. Decree against defendant for part of the relief sued for.

H. B. Parker, of Goldsboro, N. C., and A. W. Graham, of Oxford, N. C., for plaintiffs.

W. W. Peirce, of Goldsboro, N. C., for trustee.

W. P. M. Turner, of Wilmington, N. C., for G. W. Waddell.

D. H. Bland, of Goldsboro, N. C., for Wayne Furniture Co.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CONNOR, District Judge. The facts, disclosed by the pleadings and proof, in respect to which there is no substantial controversy, are:

The Andrews-Waddell Furniture Company, a corporation, was engaged in buying and selling furniture in the city of Goldsboro, N. C., prior to January, 1912. The stock was sold to J. F. White and others, who organized the Wayne Furniture Company, with a capital stock of $5,000, taking over the assets and assuming the payment of the debts of the Andrews-Waddell Furniture Company. Said company was indebted to the Oxford Furniture Company in the sum of $2,200, evidenced by its note secured by a chattel mortgage on all of its property and assets, bearing date September 29, 1911, duly recorded. The Oxford Furniture Company was indebted to the First National Bank of Oxford, and, for the purpose of securing the payment thereof, and a line of credit, said furniture company, before its maturity, transferred and assigned said note and mortgage to the said Bank of Oxford. The Oxford Furniture Company transferred its property and assets to the International Furniture Company, which assumed the indebtedness of said company to the bank. The Wayne Furniture Company, during the year 1913, executed its notes in renewal, and for other purchases, to the said International Furniture Company, which said company, for value and before maturity, transferred and assigned said notes to said Bank of Oxford. Said indebtedness amounted, July 1, 1913, to about the sum of $2,400.

The Andrews-Waddell Company was indebted to the National Bank of Goldsboro in the sum of $1,500, evidenced by two notes. The charter of the Wayne Furniture Company authorized and empowered the corporation to issue bonds and to execute a mortgage on its property to secure the same in such amount and upon such terms as its board of directors should deem proper. On the 18th day of April, 1912, the board of directors of said company adopted a resolution authorizing, with the assent of the stockholders, the issue of bonds to the amount of $10,000, and the execution of a deed in trust to the National Bank of Goldsboro, for the purpose of securing the payment of said bonds, on all of its property and assets then owned or which should be thereafter acquired. The stockholders of said company, at a meeting held on the 18th day of April, 1912, approved the resolution of the board of directors, and directed the issue of said bonds and deed of trust, all of which is a matter of record. In said resolution it is recited that the board of directors desired to "extend and enlarge its business," etc.

Pursuant to the said resolution, the board of directors of said company caused to be prepared the bonds of said company, in denominations of $500 each, to the amount of $10,000, bearing interest at the rate of 6 per cent., payable semiannually and maturing in five years, and a deed of trust to said Bank of Goldsboro, in accordance with said resolution. The name of said company was signed to said deed and bonds by the president of the company, and attested by the secretary, who affixed the seal of said corporation thereto. The deed of trust was also executed by the First National Bank of Goldsboro, by its president, and attested by the cashier, as secretary, who affixed

the seal of said bank thereto. There is attached to the said deed of trust a certificate in the following words and figures, to wit:

"State of North Carolina, Wayne County.

"The execution of the foregoing instrument, by the National Bank of Goldsboro, was this day proven before me by the oath and examination of George C. Kornegay, cashier of the above-named bank.

"May 14, 1912. H. C. Smith, Notary Public."

This certificate is pasted on the last sheet of said deed. Pasted below the foregoing is a certificate in the following language (printed, except date and signature):

"State of North Carolina, Wayne County.

"The foregoing instrument has been duly proven, as appears from the foregoing seals and certificates, which are adjudged to be in due form and according to law. Let the same, with said certificate, be registered.

"Witness my hand and official seal this the 15th day of May, 1912.
    "[Seal.] James R. Hatch, C. S. C."

The certificate of the register of deeds of Wayne county shows that the deed was, on May 15, 1912, registered in Book 53, on page 539, in the office of the register of deeds for said county.

The deed and bonds bear date April 18, 1912. On May 10, 1912, the Wayne Furniture Company executed to the National Bank of Goldsboro its promissory note for $5,000, payable January 1, 1913, and, as collateral security therefor, deposited with said bank $5,000 of said bonds, of $500 each, numbered from 1 to 10, inclusive. The loan was made upon the faith of the deposit of said bonds. The proceeds of said note, less discount, were on May 14, 1912, deposited in said bank to the credit and subject to the check of said furniture company. It was drawn out soon thereafter. The notes held by the bank for $1,500 against the Andrews-Waddell Company, assumed by the Wayne Furniture Company, were paid from the proceeds of said note of $5,000. Payments amounting to $600 have been made on said note. The note was indorsed by J. F. White, who was president, and T. A. Henly, who was secretary, of said Wayne Furniture Company.

Immediately after their execution, six of said bonds, numbered 11 to 16 inclusive, were delivered to the International Furniture Company, of which the said J. F. White was president, to secure its indebtedness to said furniture company, evidenced by notes held by said company, which had been assigned to the First National Bank of Oxford. Said bonds were immediately delivered by said furniture company to said bank to secure the indebtedness of the furniture company to said bank and to furnish a further line of credit to said International Furniture Company. One of said bonds of $500 was delivered to the Bank of Wayne as collateral security for a note of $350 held by the bank, and is now owned by said bank.

Defendant E. S. Waddell, guardian, holds three notes, of $389.67, executed by the Wayne Furniture Company August 24, 1912. On the ——— day of ———, 1913, being more than four months prior to the filing of the petition in bankruptcy against the said Wayne Furniture Company, the said company, pursuant to an order of the superior court of Wayne county, assigned as security for said notes three of

said bonds, of $500 each, and he now holds said bonds as collateral security for said notes.

On September 23, 1913, the Bank of Goldsboro, trustee, caused the said deed of trust of April 18, 1912, to be admitted to probate and a certificate of the clerk of the court attached thereto, in the form prescribed by the statute in force May 15, 1912, in North Carolina, and the said deed was again recorded in Book 70, p. 268, in the office of the register of deeds of Wayne county.

On the 1st day of September, 1913, the Bank of Goldsboro instituted an action in the superior court of Wayne county against the Wayne Furniture Company for the purpose of securing possession of the property and assets of said company, pursuant to the provisions of said deed of trust, and George T. Norwood, Esq., president of said bank, was appointed receiver of said property by the judge of said court, and upon his qualification, in accordance with the terms of said order, took into his possession, said property and assets.

On the 1st day of October, 1913, upon the petition of certain of its creditors, the Wayne Furniture Company was adjudged bankrupt, and at the first meeting of its creditors defendant E. W. Hill was elected and qualified as trustee, and as such claims to be entitled to the possession of said property and assets, including the amount collected by said receiver from said assets and held by him.

On May 6, 1913, T. A. Henly, secretary of said company, made a statement of the financial condition of said company to the "Bureau of Credits," showing assets amounting to $25,675 and liabilities amounting to $12,300, showing net worth $13,375. Among the assets were, "Accounts and notes outstanding which are good," $21,000.

There is no evidence that this statement was incorrect, except in respect to the value of the notes and accounts. The indebtedness stated included the amount due the banks, for which the bonds were assigned as security. T. A. Henly, secretary, says:

"At the time we negotiated the loan at the national bank, the concern was insolvent; but I did not know it. On the day we got the money, we bought a car load of goods, but didn't pay for them."

There is no evidence showing that either the Bank of Goldsboro, the Bank of Oxford, or the Bank of Wayne, or E. S. Waddell, guardian, had knowledge or cause to believe that the Wayne Furniture Company was insolvent at the time that they took the bonds. There is evidence showing that the defendant Bank of Goldsboro had knowledge that said furniture company was insolvent on the 23d day of September, 1913. There is no evidence that the Bank of Oxford, the Bank of Wayne, or E. S. Waddell, guardian, knew of the insolvency of the furniture company on said day. The defendant, E. W. Hill, trustee, insists:

(1) That the certificate of probate, upon which the deed of trust was admitted to registration, is invalid, thereby invalidating the registration of May 15, 1912.

(2) That the probate and registration of September 23, 1913, being within four months prior to the adjudication in bankruptcy of said

company, is invalid as against its creditors under the provisions of section 60b, Bankruptcy Act.

Section 1005, Revisal of 1905, prescribes a form of certificate of probate for deeds of corporations "which shall be deemed sufficient, but shall not exclude other forms of probate, which would be deemed sufficient in law." In construing this section of the Revisal, the Supreme Court of this state, in Withrell v. Murphy, 154 N. C. 82, 69 S. E. 748, quoted with approval the following rule of interpretation, announced by the editor in 1 Eng. L. & P. 463:

> "It must appear from the certificate, when read in connection with the deed, that the person making the acknowledgment was authorized to execute the instrument for the corporation, that he was known, or proved, to the officer to be the corporate official he represented himself to be, and that he acknowledged the instrument to be the act and deed of the corporation. * * * A substantial showing of the requisite facts is all that is required, and where the instrument purports to be the act of the corporation, the certificate will not be held defective because it recites that the person who executed it, in behalf of and under the authority of the corporation, acknowledged it to be his act and deed instead of that of the corporation."

In that case the certificate was held to be insufficient. While, of necessity, the decided cases on the subject are dependent upon the peculiar facts disclosed in each case, we find a few general principles enforced which aid the courts in deciding instant cases. The legislation upon the subject in this state from the earliest period discovers a purpose to make mortgages and deeds of trust effectual as against creditors and purchasers for value, only from and after the date of their registration. Acts 1829–30, c. 20, § 1; R. S. c. 37, §§ 23, 24; Rev. Code, c. 37, § 22; Code 1883, c. 27, § 1254.

Prior to 1855, the execution of deeds could be acknowledged, or proven, only in the court of pleas and quarter sessions, when the manner of such proof or acknowledgment was entered on the minutes of the court, or before a judge of the Supreme or superior court, when the certificate was indorsed on the deed by such judge. By the act of 1855, the clerk of the county and of the superior court were authorized to take probate of deeds required to be registered. The manner of probate was evidenced by the certificate of the clerk. By reason of the changes made by the Constitution of 1868, in the judicial system, abolishing the county court, the Legislature of 1868–69, enacted a comprehensive statute regulating the subject of probating deeds and mortgages. This act, with the amendments thereto, was codified in the Code of 1883 as chapter 27. The officer taking the probate was required by these statutes to "enter his certificate thereon," which was to be registered together with the deed. A number of amendments were made to the Code of 1883, which were again codified by the General Assembly of 1899 in chapter 235.

[1, 2] The several sections of this act, relating to the subject, with amendments, were again codified and may be found in chapter 18, Pell's Rev. 1905. For the first time in our legislation, forms for the certificate of probate of deeds executed by corporations are prescribed, with the provision that they should not "exclude other forms of probate, which would be deemed sufficient in law." This provision can

only refer to forms of probate deemed sufficient by the common law, and this would be met by a certificate showing that the officer whose duty it was to affix the seal acknowledged that he did so. Kelly v. Calhoun, 95 U. S. 710, 24 L. Ed. 544. It appears to be well settled in this state that the only authority which the register has for registering the deed is the certificate and order of the probating officer.

"Until a deed is proved in the manner prescribed by the statute, the public register has no authority to put it on his book; the probate is his warrant, and his only warrant, for doing so." Bynum, J., in Todd v. Outlaw, 79 N. C. 235.

Referring to the probate in that case, he says:

"Not having been duly proved, the registration was ineffectual to pass the title as against creditors or purchasers."

This decision has been frequently cited as authority. Quinnerly v. Quinnerly, 114 N. C. 145, 19 S. E. 99.

We are thus brought to consider the question whether the certificate of probate of May 15, 1912, is sufficient to entitle the deed to registration, either under the provisions of section 1005 of the Revisal or "other forms of probate deemed sufficient in law." The Supreme Court of this state has, in conformity with the ruling of other courts, state and federal, held that a substantial compliance with the statutory requirements is sufficient, and has invoked all natural and reasonable presumptions in aid of certificates defective in form. Cochran v. Improvement Co., 127 N. C. 386, 37 S. E. 496, in which the decided cases are cited. In Deans v. Pate, 114 N. C. 194, 19 S. E. 146, the acknowledgment was taken before a notary of another state. There was a variance between the name of the notary signed to the certificate and the name on his official seal. The clerk of the court of Wayne county, using the certificate, in the identical language found on the deed in this case, certified that the deed "had been duly proven as appears from the foregoing seal and certificate." Upon objection to the form of the certificate, the present Chief Justice said that:

The "certificate does not follow the very words of the statute, * * * in that it does not adjudge that said probate is 'in due form.' But it is intelligible, and means substantially the same thing, and 'will be upheld without regard to mere form.'"

In Horton v. Hagler, 8 N. C. 48, the certificate of probate to a bill of sale, the witness to which was dead, recited that:

"It had been duly proven by the oath of D. H., who proved the handwriting and signature thereto of B. Hagler and T. H. Hagler."

The Chief Justice said, upon appeal, that:

If the clerk had certified only that the bill of sale was duly proved, it "must have been taken upon the res judicata pro veritate accipitur. * * * But when the certificate enters into detail, and goes on to show in what manner the deed has been proved, the inquiry into the legality of the proof is open to the court. In this case what is meant by 'duly proved' is explained by the statement that D. H. swore to the signature of Benja. Hagler, the subscribing witness; and that shows that the paper was not duly proved, since the death or absence from the state of Benja. Hagler was not proved."

In Quinnerly v. Quinnerly, supra, the recital was that "the mort-gagee had procured the same to be proved by the court." This was held sufficient, because there "was no evidence to show that the probate was insufficient." So in Starke v. Etheridge, 71 N. C. 240, as to a deed probated prior to the passage of the statute requiring the certificate of probate to be registered, it was held that the word "Jurat," written on the deed by the clerk, was sufficient to show that it had been duly proven. Judge Bynum said:

"Assuming that some written memorial of the fact of probate is necessary, it still appears that at the time of probate the officer who took it did indicate his official act by indorsing upon the deed the word 'Jurat' (juratus), the primary meaning of which is 'Sworn,' but the derivative signification is 'Proved.' In support of the deed, 'Ut res magis valeat quam pereat.' "

In Cochran v. Improvement Co., 127 N. C. 386, 37 S. E. 496, the decisions are cited and commented upon by Mr. Justice Furches. Brown v. Hutchinson, 155 N. C. 205, 71 S. E. 302. In Moore v. Quickle, 159 N. C. 129, 74 S. E. 927, a deed executed in 1859 was admitted to registration upon it appearing that the word "jurat" was indorsed on it. Mr. Justice Allen said:

"The question has arisen in several cases before this court, and it has been held, as we think, without exception, in the absence of evidence, and when there is nothing in the form of the probate on the deed indicating that it was improperly taken, that a presumption arises from the act of the register of deeds in admitting the deed to registration that the probate was by the proper officer and regular, and that proof of that fact was before him."

The presumption that the probate was made in accordance with the provisions of the statute is appropriately applied in this state, because, contrary to the doctrine in many other states, it is held that taking and certifying the probate of a deed is a judicial, and not a mere ministerial, act. The same presumption is indulged in regard to the probate of a will. Lumber Co. v. Branch, 158 N. C. 255, 73 S. E. 164. In Kelly v. Calhoun, 95 U. S. 713, 24 L. Ed. 544, Mr. Justice Swayne, in discussing the validity of a certificate of probate, says:

"Instruments like this should be construed, if it can be reasonably done, 'ut res magis valeat quam pereat.' It should be the aim of Courts, in cases like this, to preserve and not to destroy."

In Carpenter v. Dexter, 8 Wall. 513, 19 L. Ed. 426, Mr. Justice Field says:

"It is the policy of the law to uphold certificates when substance is found, and not to suffer conveyances, or the proof of them, to be defeated by technical or unsubstantial objections."

That the legislative department has recognized the wisdom of this policy in regard to the registration of deeds is clearly shown in the large number of validating acts, found in the Public Laws, at almost every session. They have been uniformly sustained by the courts. Controlled by the principles so uniformly adhered to, we proceed to inquire whether the certificate in this record can be sustained. It is clear that, if the clerk had simply certified that the deed had been duly proved, no difficulty would be found in invoking the presumption of regularity. The trouble is found in the fact that, on May

14, 1914, George C. Kornegay, cashier of the Bank of Goldsboro, undertook to prove the execution of the deed "by the National Bank of Goldsboro" before a notary.

[3, 4] Without pausing to consider the validity of that certificate, it is manifest that proof of the execution of the deed by the Bank of Goldsboro only was attempted. Mr. Kornegay was not competent, nor did he undertake to prove, its execution by the Wayne Furniture Company. On the next day, May 15, 1912, the clerk certifies that:

The "foregoing instrument *has been duly proven as appears from the foregoing seals and certificates, which are adjudged to be in 'due form.'*"

It is manifest that he was simply passing upon the sufficiency of the certificate of the notary before whom Mr. Kornegay had attempted to prove the execution of the deed by the bank. Whether this certificate of probate, by the notary, was sufficient to entitle the deed to registration, as to the bank, is immaterial, because it was not essential to its validity that the bank should have executed the deed. The acceptance of the trust would have been presumed, or, if not accepted, another trustee appointed. It is a well-settled maxim of equity that a trust shall not be permitted to fail for want of a trustee. The certificate of the clerk is in the form, substantially, prescribed by Revisal, § 999, and, by reference to the case of Deans v. Pate, 114 N. C. 194, 19 S. E. 146, it will appear that it is the form used by the clerk of the superior court of Wayne county, when complying with the provisions of that section. The form of the certificate brings the case clearly within the principle announced in Horton v. Hagler, supra, and Moore v. Quickle, supra, thereby removing it from the protection afforded by the presumption. I am constrained to hold that the certificate is invalid and that the deed was not entitled to registration.

[5] Plaintiffs, to meet this difficulty, offered to prove by Mr. White, the president, and Mr. Henley, the secretary, of the Wayne Furniture Company, what occurred at the time the certificate was made. Defendants objected to the introduction of the parol evidence. Reserving the question respecting its competency, the witnesses were permitted to testify. J. F. White said:

"Mr. Henley and I signed the deed of trust in our office and attached the seal. I went with him to the clerk's office and was introduced to Mr. Hatch, the clerk. We told him that we had a deed of trust that we wanted registered and approved. In taking our affidavit, he had some trouble in finding the Bible. It was among some papers on his desk. He swore us in regard to our signatures, and handed the deed back to Mr. Henley to carry to the register's office. Something was said about the cost of registration. The register said it was quite long, and he could not tell then what the cost would be; that the bill would follow the deed when he returned it to us. Mr. Hatch asked us about our signatures, the corporation, and the corporate seal. Mr. Henley told him that I was the president. I did not, before that time, know Mr. Hatch. He asked me if the signature was mine as president of the company and that of Mr. Henley as secretary. He asked Mr. Henley if he was secretary, and placed the corporate seal on the deed. I do not remember when Mr. Hatch put the certificate on the deed."

T. A. Henley testified:

"On the day upon which we signed the deed of trust of the Wayne Furniture Company to the National Bank of Goldsboro, Mr. White and I went to

the clerk's office and asked Mr. Hatch, the clerk, to record the deed in trust, which we then had with us. He swore us, and sent us to the register of deeds with the paper. The register of deeds accepted the paper. I asked him the amount of his fee. He said he could not tell then; it would come along with the deed when returned to us; that he could mail his bill with the return of the paper, which he did later on."

This testimony is not contradicted. Defendants move that it be stricken out as incompetent and irrelevant. No authoritative decisions of the Supreme Court of this state have been discovered. Certain expressions are found in opinions which would indicate that, for some purposes, such evidence may be heard.

It is suggested that the statute does not require that the fact that the deed has been proven before the clerk shall be evidenced by any written certificate indorsed upon, or attached to, the deed; that this requirement applies only to deeds which have been proven before other officers, such as justices of the peace, notaries, etc., or when the probate is taken by officers authorized to do so, resident in other states. For the reasons which are set out in Richmond Cedar Works v. Pinnix (D. C.) 208 Fed. 785, it seems quite clear that, prior to 1868, where deeds were proven "in open court" and a record thereof made on the minutes, the clerk was not required to indorse on the deed any certificate thereof. The delivery, by the clerk, of such deeds as had been proven at the term of the court to the register in accordance with the provisions of R. S. § 98 (Rev. Code, § 96), was sufficient evidence to the register that they had been duly proven. In Freeman v. Hatley, 48 N. C. 115, Judge Pearson says:

"The regular course is, when a deed is proven or acknowledged in the county court, to make an entry of the fact in the minutes, and for the clerk, by the way of identifying the deed, to indorse on it 'Proved and ordered to be registered'; but there is no statute which requires the register to put this indorsement on his book, and, if the original [deed] be lost, we suppose the most plenary proof would be a certified copy from the register, and also a certificate of the clerk of the county court that the deed had been proved and ordered to be registered."

This case was evidently in the mind of Judge Bynum when, in Starke v. Etheridge, 71 N. C. 240, he says:

"The statute * * * nowhere requires, and no decision of our courts goes to the length of establishing, that there must be a formal written adjudication of probate, or order of registration, indorsed upon the deed itself, or recorded elsewhere, however proper that it should be so done. The act prescribing the mode of probate and registration (Bat. Rev. c. 35) draws a distinction between deeds and other instruments acknowledged or proved before the clerk himself and those deeds and instruments which are not proved before him, but are proved before another tribunal, as out of the state, for instance, or by a commission issued for that purpose."

In that case the word "Jurat" was written on the deed by the clerk. An examination of ancient deeds discloses the practice of the clerks to indorse, on deeds proven in open court, either this word, or the abbreviation "Ackd.," or some other symbol to indicate that it had in fact been admitted to probate. The point *decided* in Etheridge's Case was that this was sufficient evidence of probate—the fact that the deed had been probated was admitted. The probate was taken in 1867. This explains the language found in several opinions in

reported cases that the fact that the deed was registered raised a presumption that it had been duly proven; that is, that it was entitled to registration. It would not seem that the court has ever held, o. intended to suggest, that the proof of probate could rest altogether in parol. The county court having been abolished by the Constitution of 1868. and by the legislation enacted in pursuance thereof probate power being conferred upon the clerk and other ministerial officers, we find that the act of 1868 (Code 1883, c. 277, § 15) requires the clerk, or other officer taking the probate, to "enter his certificate thereon." It will be found that, for the same reasons which prompted this requirement, the statutes which have been enacted since the change in the law, regarding probate of deeds, require that the certificate shall be attached or indorsed.

An examination of the legislation incident to the changes made in the judicial system of the state leads to the conclusion that, since 1868, the statute requires, as the method of authentication and warrant to the register to record a deed, that a certificate, complying substantially with terms of the statute, shall be attached to, or indorsed upon, the deed. Todd v. Outlaw, 79 N. C. 235. This is in accordance with the reason of the thing. It would hardly be contended that the registration of a deed without any certificate of probate, or other written indorsement or record, from which a presumption could be drawn that it had been duly proven, would be valid.

In the absence of a certificate, may the execution of the deed, for the purpose of aiding a defective registration, as against creditors and purchasers for value, be shown by parol? It is hardly a satisfactory answer to this inquiry to say that the certificate is not conclusive evidence of its execution, when drawn into question in a direct proceeding instituted for that purpose. We are not now dealing with the question whether the deed was in fact signed, but whether, for the purpose of its registration, its execution has been proven according to the provisions of the statute. The proof taken by the probating officer is ex parte and conclusive only pro hac vice. If, upon a direct issue in respect to its execution, the proof shows that it was not in fact executed or signed in either of the methods recognized as valid, the deed becomes inoperative, not because of a defective probate and registration, but because it is not the act and deed of the alleged grantor or maker. Judge Bynum says:

"The officer who takes the probate does not look into the instrument or the interests acquired under it, and as the probate is ex parte it does not conclude. Therefore it may be shown by parol that what purports to be a deed is no deed, but a forgery. * * * As the validity of the registration may be thus impeached, so it may be supported by the same kind of evidence."

For this he cites Justice v. Justice, 25 N. C. 58. In that case it was held that parol evidence would be heard to explain an ambiguity in the record of a justice's judgment. The analogy is not very close. Moore v. Eason, 33 N. C. 568, is of but little value in the decision of this question.

In the absence of controlling authority in this state, we inquire what rule has been announced in other jurisdictions. In Ross v. McClung,

226 F.—8

6 Pet. 283, 8 L. Ed. 400, Chief Justice Marshall discussed the provisions of the North Carolina act of 1715 respecting the manner in which deeds were admitted to probate and registration. The case was tried in the Circuit Court of the United States for the District of Tennessee. By reason of the legislation in force at the date (1793) of the probate, the Tennessee court followed the North Carolina statute in regard to the probate and registration of deeds. Affirming the ruling of the Circuit Court holding the certificate of probate invalid, the court sustained it in rejecting parol evidence, saying:

"This is an attempt by parol testimony to vary a record. It is an attempt to prove by the officer of the court that his official certificate, * * * indorsed on the deed, did not conform to the true state of the proof. This is in such direct opposition to the settled rules of evidence as to render it unnecessary to remark the danger of trusting to memory in such a case, after a lapse of 35 years."

In Haydon v. Westcott, 11 Conn. 129, Bissell, J., discussing the statute of that state, says:

"The statute requires that all deeds of land shall be acknowledged; and the only question is, how the acknowledgment shall be evidenced, because it is obvious that, if parol evidence may be introduced to aid a defective certificate, on the same principle it may be introduced to supply one. The acknowledgment may rest in parol, and the certificate of the magistrate may be entirely dispensed with. The claim now made inevitably leads to this conclusion. It can only be necessary to observe that such a claim is opposed to the uniform course of practice, to the spirit and meaning of the statute, and to the authority of adjudged cases."

[6, 7] In Pendleton v. Button, 3 Conn. 406, the court says:

"The acknowledgment, to be recorded, must necessarily be in writing; and such is the invariable practice. To the record all men recur, for the purpose of ascertaining the title of lands. And to satisfy the inquiry a written acknowledgment is indispensably necessary."

See 1 Cyc. 616; 1 Am. & Eng. Enc. 541.

While, as said by Sir Mathew Hale, "judges should be astute to find means to make acts effectual, according to the honest intent of the parties," they may not, to meet "hard cases," which it has been said are "the quicksands of the law," disregard principles based upon experience, statutes effectuating the legislative will, or well-considered decisions of courts which have become the rule of action for the guidance of the people. While it is true, as urged by counsel in this case, the deed of trust upon which plaintiffs rely was placed upon the record, the purpose of the law in requiring it to be done, giving notice to creditors and purchasers for value, accomplished, yet an examination of the record disclosed that its execution had not been proven as the statute required, and that, therefore, the registration was without warrant or authority of law. The system regulating the probate and registration of deeds and mortgages is entirely statutory, and creditors and purchasers are entitled to rely upon at least a substantial compliance with such regulation. It behooves those who seek to acquire security for their debts, to the exclusion of others, by a conveyance of the property of their debtor, to see to it that the law is substantially complied with. To receive parol evidence, dependent upon

the slippery memory of interested parties, to supply evidence of acts which the law requires to be certified, in writing, at the time they are done, and preserved in a simple, but permanent, form, would be a dangerous innovation upon both practice and precedent. It is difficult to restrain the thought that, in the effort to extend to a large number of officials probate powers, the Legislature has endangered the safety of titles. The large number of validating and curative statutes, with the numerous reported decisions regarding their construction and validity, suggests the inquiry whether a simpler method, more rigidly adhered to, of probating deeds, would not conduce to more certainty and greater safety in securing title to property. United States v. Hiawassee Lumber Co., 238 U. S. 553, 35 Sup. Ct. 851, 59 L. Ed. 1453. The parol evidence offered by plaintiff must be disregarded as incompetent. The deed was not, therefore, as against creditors and purchasers for value, registered until September 23, 1913. This was but a month before the adjudication of the Wayne Furniture Company in bankruptcy. The question arises as to the rights, as against the trustee in bankruptcy, of the holders of the bonds, or, to state the question differently, what title the trustee acquired to the property?

[8] In the absence of any suggestion that the bonds or deed of trust were executed with any fraudulent purpose, or that the deed was withheld from registration for any such purpose, the question arises to what extent it was a valid lien on the property under the state law at the date of the adjudication of the furniture company. Section 67d provides that:

"Liens given or accepted in good faith and not in contemplation of, or any fraud upon, this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary, in order to impart notice, shall be to the extent of such present consideration only, not be affected by this act." Amendment of 1910.

The deed of trust constituted, under the laws of North Carolina, a valid lien from and after its valid registration, September 23, 1913, Rev. 1905, § 982. No creditor had, at that time, fastened any lien, by levy of an execution thereon or otherwise. It does not appear that judgments had been rendered or any suits brought against the furniture company. It is well settled by the decisions in this state that, unless a general creditor has secured a specific lien on the property of the mortgagor or grantor, before the registration of the deed or mortgage, it is valid as against general creditors from its registration.

In Holt v. Crucible Co., 224 U. S. 262, 32 Sup. Ct. 414, 56 L. Ed. 756, Justice Van Devanter discussed the Kentucky statute in regard to the registration of mortgages, which, in this respect, is the same as Rev. 1905, § 982, holding that, as no creditor had fastened any lien upon the property covered by the mortgage prior to the proceedings in bankruptcy, by which the title passed to the trustee, the mortgage was valid as against him. Davis v. Hanover Saving Fund, 210 Fed. 768, 127 C. C. A. 318. In Anderson v. Chenault, 208 Fed. 400, 125 C. C. A. 616, Judge Pardee says:

"As the Chenault mortgage was given for a valid consideration, and not to hinder, delay, or defraud creditors, and * * * was not withheld from record with any fraudulent intent, nor to bolster the credit of the mortgagor, and * * * was recorded before any lien or claim of the trustee in bankruptcy did or could attach," it was valid as against him.

A clear comprehension of the present state of the law in respect to the status of the trustee, in regard to property upon which a mortgage has been executed prior to the adjudication, will be had by referring to several decisions of the courts. In York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, it was held that the Ohio statute, which made chattel mortgages valid as against creditors from the date of their registration only, applied to those creditors who, between the time of, the execution of the mortgage and its registration, had secured liens by attachment, execution, or otherwise; that under the provisions of the Bankruptcy Act the trustee, in respect to the title which he took, stood in the shoes of the bankrupt, and took the title subject to the unrecorded mortgage.

It may be well to note that In re Dunn Hardware & Furniture Co. (E. D. N. C.) 132 Fed. 719, which appears to hold otherwise, was decided prior to the decision in the York Mfg. Co. Case. The amendment of 1910 to section 47 vested in the trustee "the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon." Mr. Collier says (Bankruptcy [9th Ed.] 659):

"The class of cases, unprovided for by the original act, and intended to be reached by the amendment, was that in which no creditor had acquired liens by legal or equitable remedies, and to vest in the trustee, for the interest of all creditors, the potential rights of creditors potential with such liens. * * * This provision, of the Bankruptcy Act puts the trustee, in so far as the assets of the estate are concerned, in the position of a lien creditor." In re Hartdagen (D. C.) 189 Fed. 546.

In Deupree v. Watson, 216 Fed. 483, 132 C. C. A. 543 (C. C. A. 6th Cir.), the mortgage was executed February 16, 1909, and recorded August 16, 1910. The amendment was ratified June 25, 1910. Judge Hollister (216 Fed. 489, 132 C. C. A. 549) says:

"The trustee takes nothing, as to any of his claims, by the amendment of 1910, and since Mrs. Watson's mortgage was effective against unsecured subsequent creditors without notice who had not fastened a lien upon the property, and by recording became 'valid' under the Kentucky statute, the attachments subsequent to the date of record are futilities." In re Doran, 154 Fed. 467, 83 C. C. A. 265.

[9] It would seem clear that, in so far as the delivery of the bonds was based upon a present consideration, and to that extent, the deed of trust was, as against the defendant trustee, a valid lien at the date upon which his title accrued. The question as to whether the execution of, the deed constituted a preference is not now being considered. For the purpose of ascertaining the respective rights of the two banks and Waddell, guardian, the question arises as to the extent, if at all, they took for a present consideration. It will be noted that, by the amendment of 1910, the lien is preserved "to the extent of such present consideration only." Collier, Bankruptcy (9th Ed.) 943; In re Foster (D. C.) 181 Fed. 703.

[10] For the purpose of disposing of the rights of the several parties, the facts in regard to the status of the National Bank of Goldsboro are: The Andrews-Waddell Company was, at the time the Wayne Furniture Company was organized, took over its stock, and assumed its indebtedness, indebted to the bank in the sum of $1,500, evidenced by the two notes. The bank held, as collateral security, lease accounts amounting to about $20,000. On May 10, 1912, the bank agreed to loan the Wayne Furniture Company $5,000, for which it was to execute notes and deposit, as collateral, ten of the bonds, of $500 each. The note was executed on that day, due January 1, 1913, and the bonds then delivered. The note was indorsed by J. F. White and T. A. Henley. The Wayne Furniture Company was, on May 14, 1912, credited by a deposit check with $5,000, less the discount.

Some time thereafter the two notes of the Andrews-Waddell Company were paid by the furniture company by its check on the bank, and the lease accounts held as collateral were delivered to the furniture company. The Wayne Furniture Company, at the time the loan was negotiated, agreed to pay these notes from the proceeds of the note of $5,000. The balance of the proceeds of the note was drawn out upon the checks of the furniture company, in regular course of its business, more than four months prior to the filing of the petition in bankruptcy.

For the purpose of fixing the character of this transaction, what actually occurred may be summarized: The Wayne Furniture Company purchased the business, assets, etc., of the Andrews-Waddell Company, and as part of the purchase price assumed the payment of its notes held by the Bank of Goldsboro, for the security of which the bank held lease accounts to the amount of $20,000. For the purpose of extending and enlarging its business, the furniture company issued and executed, as security therefor, a deed of trust upon its property and assets. The Bank of Goldsboro agreed to loan the furniture company $5,000, upon its note, secured by the deposit of ten of the bonds, of $500 each. It was also agreed, at the same time and as a part of the same transaction, that the furniture company, from the amount loaned, would pay the Andrews-Waddell Company notes, the payment of which said company had assumed in its purchase from the Andrews-Waddell Company; the bank agreeing to surrender to the furniture company the lease accounts held as collateral security. This transaction was, between April 18 and May 14, 1912, consummated.

It is evident that all parties regarded the furniture company as solvent, and no thought of securing a preference or other advantage over creditors was in their minds. They supposed, trusting to their attorneys and the officers who should have known the law, that the deed of trust had been probated and registered according to law. The several steps taken in the course of completing the transaction, no other rights intervening, should, upon familiar principles, be treated as one continuous transaction. The language of Mr. Justice Holmes in Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995,

states the principle upon which the conduct of the parties should be interpreted.

"The parties were business men acting without lawyers and in good faith attempting to create a present security out of specified bonds and stocks. Their conduct should be construed as adopting whatever method consistent with the facts and with the rights reserved is most fitted to accomplish the result." National City Bank v. Hotchkiss, 231 U. S. 56, 34 Sup. Ct. 20, 58 L. Ed. 115.

The bank certainly parted with $5,000 as the present consideration of the note and bonds hypothecated as security therefor. It surrendered, and the furniture company received, into its assets lease accounts to the amount of $20,000, held as security for the notes of the Andrews-Waddell Company. There is no suggestion that they were not of the actual value of the notes. The remainder of the loan, less interest, it paid on the checks of the furniture company. It would seem that the bank paid for the note and bonds as collateral as a present consideration full value.

### The First National Bank of Oxford.

The facts in regard to the claim of the Bank of Oxford, as stated in its bill filed herein, are:

On September 29, 1911, the Andrews-Waddell Company was indebted to the Oxford Furniture Company in the sum of $2,200, evidenced by its promissory note payable January 27, 1912, secured by a chattel mortgage upon all of the assets and property of the Andrews-Waddell Company, duly registered. Said Oxford Furniture Company was indebted to the First National Bank of Oxford, and to secure said indebtedness, and in order to procure further credit and accommodation from the bank, on October 7, 1911, it transferred and assigned the note and mortgage to the said bank "as collateral to secure any notes to be discounted by them for the Andrews-Waddell Furniture Company." The Oxford Furniture Company was thereafter dissolved, and its assets transferred to the International Furniture Company, which assumed the payment of the obligations of the Oxford Furniture Company, including its indebtedness to the bank.

From time to time the Andrews-Waddell Company, and its successor, the Wayne Furniture Company, became indebted to the Oxford Furniture Company, and its successor, the International Furniture Company, in various amounts, for which they executed promissory notes, either to J. F. White, who was president of said company, or to said companies. These notes were assigned to the bank, which discounted them and held them as collateral for the indebtedness of the Oxford Furniture Company. All of said notes were taken up and discharged, except those set out in the list attached. The notes now held by the bank were executed during the year 1913, and aggregate, with interest, $2,494.03.

After reciting the execution of the bonds and deed of trust hereinbefore described, the bank alleges that the Wayne Furniture Company—

"delivered six of them, of the denomination of five hundred dollars each, to the International Furniture Company to secure its indebtedness to the In-

ternational Furniture Company; but as all the notes by the Wayne Furniture Company had been discounted by the Bank of Oxford, said International Furniture Company immediately transferred and assigned the said bonds to said bank to secure the indebtedness of the International Furniture Company to said bank and to furnish a further line of credit to said International Furniture Company."

The evidence, so far as it is reasonably clear, sustains the allegations of the bill. It does not appear that, when the bonds were delivered to J. F. White, president of the International Furniture Company, any agreement was had by which the chattel mortgage of September 29, 1911, given to secure the note of $2,200, was to be canceled and the bonds accepted as security in lieu thereof; nor does it appear that the Bank of Oxford, which held the note and mortgage by assignment, surrendered the note or canceled the mortgage, or that, up to this time, the mortgage has been canceled. No officer of the bank has been examined in this cause. The only person who has undertaken to explain the dealings between the two companies, he being president of both, is Mr. J. L. White, and his testimony is painfully confused and obscure. He says that the mortgage has not been canceled; that, at the time the bonds for $3,000 were delivered, nothing was said about canceling the mortgage.

"We took them to secure loans we had already gotten, or for the future. I mean by 'we' the First National Bank of Oxford."

The difficulty found in ascertaining the status of these bonds consists in the fact that Mr. White was president of the Wayne Furniture Company, and the transaction was had with himself. It seems clear that the bonds were deposited by White, president of the International Furniture Company, with the bank—

"as collateral security for any notes that we discounted with them. As the furniture was sold to the Wayne Furniture Company, and their notes executed, they were discounted by the Oxford Bank and secured by the bonds as collateral."

The title of the bank depends, however, upon the purpose for which the bonds were deposited by the Wayne Furniture Company with the International Company, and this Mr. White says "was to secure loans that we had already gotten or for the future." This, in so far as the future is concerned, is quite vague and uncertain. While somewhat uncertain, it would seem that the note of $2,200, held by the bank against the Andrews-Waddell Company, has been paid. To what extent, if at all, part of it is included in the new notes, held by the bank is uncertain.

### The Bonds Held by E. S. Waddell, Guardian.

[11] The answer sets out the manner in which he acquired the bonds. He holds three notes given by the Wayne Furniture Company, in the sum of $389.67, each dated August 24, 1912, being interest from date. On the ——— day of ———, 1913, and more than four months prior to the filing of the petition in bankruptcy against the Wayne Furniture Company, suit was begun by said guardian in the superior court against the furniture company, in which a tempora-

ry receiver was appointed for said company. Upon the hearing of the motion to make the receivership permanent, the furniture company delivered to said guardian the three bonds as collateral to secure the said notes, whereupon the suit was dismissed. It is manifest that the bonds were not delivered upon a present consideration.

### The Bond Held by the Bank of Wayne.

The evidence in regard to this transaction is also obscure and unsatisfactory. The Bank of Wayne has not filed an answer, nor is it represented by counsel. The only evidence in regard to the transaction in which the bond was delivered to it is that of Mr. Henley, the secretary of the Wayne Furniture Company. From his testimony it appears that the Andrews-Waddell Company owed the Bank of Wayne a note for about $350, and as collateral security therefor he delivered the bond to the bank. No present consideration passed from the bank therefor.

The parties, upon the announcement of the foregoing opinion, came to an agreement respecting the terms of a decree which will be entered in the cause.