THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, etc., Plaintiff, v. CHICAGO TITLE AND TRUST COMPANY, as Executor, etc., of EDITH ROCKEFELLER MCCORMICK, Deceased, and Others, Defendants.

Supreme Court, New York County, May 24, 1934.

*Milbank, Tweed, Hope & Webb* [*Harrison Tweed, William Dean Embree* and *Wilber Stammler* of counsel], for the plaintiff.

*Martin Taylor*, for the defendant Chicago Title and Trust Company.

*John E. Mack*, for the defendant Fowler McCormick.

*Thomas G. Chamberlain* [*John W. Davis, Otis Bradley, David E. Hudson* and *Edward J. Willi* of counsel], for the defendant Muriel McCormick Hubbard.

*Thomas M. Debevoise* [*Eugene Congleton* of counsel], for the defendants John D. Rockefeller, Jr., and others, as a committee.

*Curtis, Fosdick & Belknap* [*Chauncey Belknap* of counsel], for the defendants The Rockefeller Foundation and others.

*Raymond E. Fosdick*, guardian *ad litem.*

*Ernst, Gale, Bernays & Falk* [*Edwin A. Falk, Henry Gale* and *Samuel E. Hirsch* of counsel], for the defendants Rissman and Baldwin.

ROBERT McC. MARSH, Referee. I shall now rule on the objections to the testimony of Charles S. Cutting, decision upon which was reserved on March twenty-ninth. During the intervening period I have carefully examined and received material assistance from the voluminous briefs of the interested parties.

These rulings will be made upon the hypothesis that the power of appointment granted to Mrs. McCormick by the trust deed was not destroyed by the documents executed in 1918, without prejudice to the future consideration of that question. These documents are already in evidence, but have not been referred to in the briefs. The contention concerning Judge Cutting's testimony may be academic, however, if the power of appointment was in fact terminated in 1918.

The power of appointment is found in that part of the language of the trust deed which requires the trustee upon the death of Mrs. McCormick, the grantor's daughter, " to convey the trust fund to

such of the issue of my said daughter, with the right wholly to to exclude any of them, or to such charitable corporation, or to or among such charitable corporations, as she may select, for such estates, in such manner, in such proportions, upon such terms and conditions, and subject to such limitations as my said daughter, by her last will and testament, duly executed in writing, shall have directed or appointed." The grantor was at the time of the execution of the trust deed a resident of New York; the trustee and successor trustee are incorporated under New York laws, conducting business in New York city, and the trust fund has always been administered here. The testatrix at the time of the execution of her will, and of her death, was a resident of Chicago, Ill., where her will was probated. This will, executed August 4, 1932, makes no reference whatever to the power of appointment, but expresses the testatrix's dispositions in the words " I give, devise and bequeath unto " each named beneficiary a specified fraction " of all my estate of every kind and nature, real, personal and mixed."

The fundamental issue on this branch of the case is whether the will effected any appointment of the trust fund under the power created by the trust deed. In so far as this is an issue of law, it is governed by the law of New York, the domicile of the grantor of the power and location of the property, and not by the law of Illinois, the domicile of the testatrix. (*Matter of New York Life Insurance & Trust Co.*, 209 N. Y. 585; *Matter of Campbell*, 138 Misc. 800; *Matter of Marsland*, 142 id. 230; *Sewall* v. *Wilmer*, 132 Mass. 131; *Farnum* v. *Pennsylvania Co.*, 87 N. J. Eq. 108; 99 A. 145; affd., 87 N. J. Eq. 652; 101 A. 1053; *Bingham's Appeal*, 64 Penn. St. 345; see, also, *Blount* v. *Walker*, 134 U. S. 607.) The controlling law of New York is found in section 18 of the Personal Property Law, which provides in substance that a will purporting to pass all the testator's personal property operates as an execution of a power of appointment unless a contrary intent " appears therein expressly or by necessary implication." In so far as the issue is one of fact it is governed by the New York law of evidence (22 C. J. 198). It is on this issue of fact that the testimony of Judge Cutting has been offered by the plaintiff, the offer being concurred in by all of the defendants except Mrs. Hubbard, the Chicago Title and Trust Company, as executor, and the Krenn assignees. Judge Cutting is a Chicago lawyer who drew the will on Mrs. McCormick's instructions and witnessed its execution. The defendant Mrs. Hubbard has objected to the receipt of his testimony on several grounds, including inadmissibility of extrinsic facts to interpret or construe the will, and incompetency of the

witness to reveal privileged communications. This testimony being in the form of a deposition and the answers to the questions having been read at the trial subject to the objections and to motions to strike out, the answers as well as the questions will be considered in making the rulings. This will be helpful in understanding the questions as they were understood by the witness himself and his interrogators and will in no way be prejudicial.

The questions asked of the witness and the answers given by him may be grouped, with a few minor exceptions, in three divisions. The first of these relates to transactions and conversations with Mrs. McCormick regarding her own property and sundry miscellaneous matters; the second relates to the law of Illinois, the method of executing powers of appointment thereunder, and advice given to Mrs. McCormick thereon; and the third division embraces conversations between the witness and Mrs. McCormick containing in substance or effect direct statements of her intentions with respect to the execution of the power of appointment. It will be convenient to consider first the admissibility of each of these divisions with respect to their subject-matter, and to take up afterwards the competency of the witness.

Objection is made to the first division, as well as to the other divisions, that no extrinsic evidence whatever is admissible for the interpretation of this will, which is said to be perfectly clear on its face, especially in view of section 18 of the Personal Property Law under which any intent not to exercise the power of appointment must appear in the will itself and not outside of it.

The apparent conflict which is found in the opinions of courts and text writers on the subject of the admissibility of extrinsic evidence for the interpretation of wills and other legal documents may be ascribed largely to three causes; *first*, a lack of uniformity in the meaning of the phrase " extrinsic evidence " in respect to its subject-matter; *second*, a difference of opinion, and perhaps a change and growth in the law, as to the conditions under which consideration may be given to any facts outside of the document; and *third*, I believe, a failure to distinguish between the logical relevancy of extrinsic facts and their efficacy or weight. The Court of Appeals has said through CHASE, J., in *Mullen* v. *Washburn* (224 N. Y. 413, at p. 420), " It is a well-established rule of law that parol evidence is admissible to apply a writing to its subject." Such a legal scholar as Surrogate FOWLER, however, has declared that " what is most generally meant in modern law by extrinsic evidence in aid of interpretation of a will is not the circumstances surrounding testator, but direct evidence of the testator's intention, *i. e.*, his declarations made outside of the written

expression contained in the will itself." (*Matter of Lummis*, 101 Misc. 258, 266.) The learned surrogate was further of the opinion that it is erroneous to claim "that in every case where a will or or other dispositive writing is up for construction or interpretation certain extrinsic things may be given in evidence in aid of interpretation or construction, viz., the situation of the maker of the instrument, or the testator, the nature of his property and the family surroundings when the will was made;" and that at common law, at least, before such evidence could be received it must be " first made to appear that the intent of the testator or the true operation of the instrument is not deducible wholly from the written expression." (*Matter of Lummis, supra,* at p. 264.) He expressed similar views as to the inadmissibility of the surrounding circumstances in *Matter of Fowles* (95 Misc. 48, 51), declaring emphatically that " extrinsic evidence is never admissible in our courts of construction except (1) where there is a latent ambiguity, arising *dehors* the will, as to the person or subject meant to be described; or (2) to rebut a resulting trust (*Mann* v. *Mann,* 1 Johns. Ch. 231, 234); (3) if a patent ambiguity may be obviated by extrinsic evidence, it is now admitted by the best authority to afford a third exception to the rule excluding extrinsic evidence," and " the only patent ambiguity which may not be so explained is one incapable of resolution."

A decidedly different opinion was proclaimed by MILLER, J., then of the Appellate Division, First Department, dissenting from the majority of the court in *Matter of Turner* (142 App. Div. 645), where he remarked that Chancellor KENT's strictures on parol evidence in *Mann* v. *Mann* (1 Johns. Ch. 231) (relied on by Surrogate FOWLER in *Matter of Fowles*), " must be understood as referring only to evidence of declarations of the testator and the like, to explain his intention," and added: "And if any rule with respect to the construction of wills is well settled, it is, that in construing wills the court is always entitled to know the surrounding circumstances, the situation of the testator and of his family, and the nature and extent of his property " (p. 651). The Court of Appeals reversed the Appellate Division and approved this portion of Mr. Justice MILLER's opinion (206 N. Y. 93, 99). Substantially the same doctrine was recognized and acted upon in *Matter of Thompson* (217 N. Y. 111, 114); *Ely* v. *Megie,* (219 id. 112, 127), and *Matter of Neil* (238 id. 138, 140), without specific reference to ambiguity, latent or patent.

The Court of Appeals has lately announced an even more liberal view in the following comprehensive language: " It is the modern rule that ' with the exception of direct statements of intention, no

extrinsic fact relevant to any legitimate question arising in the interpretation of writings and admissible under the general rules of evidence ' can be shut out." (*Matter of Smith*, 254 N. Y. 283, 289.)

A very recent opinion of the Appellate Division, Fourth Department, tersely and clearly expresses, as follows, the nature of the extrinsic facts most frequently admitted, as well as the purpose of their admission: " While the will must speak for itself, and the intention of the author must be gathered from the instrument, the court, in order to understand better and interpret the language of the testator, should, so far as possible, place itself in his position at the time he executed the will, and take into consideration all the surrounding facts and circumstances, including his family relations, the state of his property, the purpose of the instrument, and the motives which might reasonably be supposed to have influenced him in the disposition of his property." (*Fell* v. *McCready*, 236 App. Div. 390, 395.)

There are, of course, limitations to the use of such extrinsic evidence, *e. g.*, it cannot be used to insert provisions for which there is no basis in the will. (*Brown* v. *Quintard*, 177 N. Y. 75; *Fries* v. *Osborn*, 190 id. 35.) Nor can it be used to contradict the unambiguous meaning of the will. (*Dwight* v. *Fancher*, 245 N. Y. 71; *Matter of Watson*, 262 id. 284.) But while courts have sometimes said that extrinsic evidence of this kind is admissible only when the language is not clear in itself, it seems that these expressions probably mean merely that where the language is capable of only one meaning, extrinsic facts will be incapable of overcoming it and, therefore, immaterial and unnecessary to its understanding. (*Matter of Smith, supra.*) At any rate there can rarely be substantial error in the admission of evidence which is impotent to affect the decision. On the other hand, the exclusion of helpful illumination may require a reversal. (*Matter of Martin*, 255 N. Y. 248; *Baumann* v. *Steingester*, 213 id. 328.)

Reconcilement of the decisions is made easier by keeping in mind that the fundamental objective of the inquiry which occasions the offer of evidence is to ascertain the intention of the testator as expressed in the instrument. (*Matter of Silsby*, 229 N. Y. 396; *Matter of Bump*, 234 id. 60; *Carley* v. *Harper*, 219 id. 295, 301.) The functions and limitations of extrinsic evidence in this search are expounded with remarkable clarity in 5 Wigmore on Evidence (2d ed. §§ 2458–2478). The intention of the testator in so far as it is not expressed in the instrument is of no importance whatever, because totally incapable of causing testamentary results. To give effect through such evidence to intentions of the testator not found

in the will or in contradiction of what is there found would violate not only the rule concerning the integration of legal documents, but also the statute requiring wills to be in writing. The law is, therefore, concerned with intentions as shown in words, and not at all with any intentions which have failed in expression through omission or mistake; with what the testator has said, and not with his secret desire. On the other hand, the words of the document will be equally ineffective unless the court receives information through the testimony of witnesses concerning the people and the property affected by its provisions. In other words, a will is unintelligible without extrinsic testimony relating it to reality, for the clearest words have no value without a picture of the testator and the world about him. Obscurity, moreover, is not always the same as omission, and while a testator's meaning may be hard to understand from the words alone, it may become easily apparent in the light of the surrounding circumstances.

It is contended on behalf of Mrs. Hubbard, however, that no extrinsic evidence whatever may be admitted in connection with the interpretation of a will for the purpose of determining whether it exercises or fails to exercise a power of appointment enjoyed by the testator. This would be an exception to the general rule, and the argument put forth is that under section 18 of the Personal Property Law the intent required to prevent a general bequest of all the testator's personal property from causing his will to operate as an execution of a power of appointment must be one which "appears therein either expressly or by necessary implication." The reasoning appears to be that if the intent is not apparent without the aid of extrinsic evidence, then it does not appear in the will. This argument is not convincing. It loses sight of the fact that not only the question of the exercise of the power of appointment, but the testamentary effect of the document in every other respect, depends on the intent of the testator as found in the words of the will and only as so found, and that the only permissible purpose of admitting extrinsic evidence in any case is to ascertain the real meaning of the language of the document. The circumstances surrounding the testator at the execution of the will may throw as much light on language touching the power of appointment as on any other language in the will, and, if it throws or may throw such light, the evidence should be received.

This was clearly the law of New York prior to the enactment of the statute (*White* v. *Hicks*, 33 N. Y. 383; *Hutton* v. *Benkard*, 92 id. 295); and the last mentioned case, as well as *Lockwood* v. *Mildeberger* (159 N. Y. 181), instead of suggesting that the statute has established the rule now asserted by counsel, seems to me rather

to point to the conclusion that there has been no such change in the law. In *Hutton* v. *Benkard* the decision of the court was placed on two grounds, *first*, that it was proper to examine the surrounding circumstances and in the light of these the will showed an intention to execute the power of appointment; and *second*, that section 176 of the Real Property Law (or its then existing predecessor) should be applied to personal property and that the will in question certainly contained no manifestation of a negative intent, either expressly or by necessary implication. The opinion contained no suggestion that extrinsic circumstances, had there been any such available which would have tended to interpret anything in the will as a basis for necessary implication of a negative intent, would not have been admissible for the purpose. And in *Lockwood* v. *Mildeberger* the Appellate Division had undertaken to examine the will in the light of the circumstances surrounding the testatrix at the time of its execution (5 App. Div. 459, 462), and had concluded that the will, in connection with the other facts shown by the testimony, indicated an intent not to execute the power. While the Court of Appeals reversed this conclusion of the Appellate Division, it referred without any adverse criticism to the examination of the surrounding circumstances (159 N. Y., at p. 186).

Counsel for Mrs. Hubbard further argue that section 18 of the Personal Property Law, which was enacted in 1897, is even stricter with respect to the present question than section 176 of the Real Property Law, which was applied in the two cases just discussed, in that it contains the word " therein," not appearing in the Real Property Law. It is suggested that evidence should be excluded under section 18 of the Personal Property Law even though admissible under section 176 of the Real Property Law. It is most unlikely, however, that the Legislature intended to create any distinction between real and personal property in this respect. (See *Hutton* v. *Benkard, supra,* at p. 305; Notes of the Commissioners of Revision on section 6 of Personal Property Law of 1897, as reprinted in Fowler's Personal Property Law of New York [2d ed.], p. 273.) Moreover, the word " therein " really adds nothing, because the will itself is in any case the only permissible medium for expressing the testator's intent. A precisely similar contention was advanced in the Supreme Court of Illinois in connection with a statute preserving an intestate share to an after-born child not provided for in the will, but was rejected in the following language: "Appellant insists that section 10 of chapter 30 (Hurd's Illinois Statutes), *ex vi termini* precludes the court from looking to anything except to the words of the will itself. This argument is based upon the phrase, ' unless it shall appear *by such will* that it was the inten-

tion of the testator to disinherit such child,' his contention being that the intention of the testator must be expressed in words in the will, and that it is not sufficient that such intention is disclosed by the application of the usual rules of interpretation, especially if, in the application of those rules, parol evidence must be resorted to. * * * In a legal sense, everything pertaining to a testamentary disposition of property must *appear by the will*, but it often becomes necessary to resort to extrinsic evidence to determine what persons or things do, in fact, appear by the will. The language of the will may be such that the court cannot determine with certainty what intention is expressed in the will, but when read in the light of surrounding circumstances the court can clearly see what before was not discernible." (*Peet* v. *Peet*, 229 Ill. 341, 353, 354, 355; 82 N. E. 376.)

It is true that some authorities interpreting the statutes for after-born children have reached a different conclusion (*Chicago, B. & Q. R.* v. *Wasserman*, 22 Fed. 872; *Carpenter* v. *Snow*, 117 Mich. 489; 76 N. W. 78), but their reasoning seems less convincing than that above quoted.

To the question, what change was made in the law by Personal Property Law, section 18, and Real Property Law, section 176, the answer seems to be that there was none in the theory that the execution of the power depends in the first instance on the expressed intent of the testator as found in the will read in the light of the surrounding circumstances; but unless the will as so read negatives the intent to execute the power, either expressly or by necessary implication, the statutes step in with a legal presumption and declare the power executed by the disposition of all the testator's property (*Lockwood* v. *Mildeberger, supra*, p. 187). I do not feel that *Lockwood* v. *Mildeberger* is authority for the view that extrinsic evidence can no longer in any conceivable case assist in compelling an implication of intent not to execute the power, where no such intent would be necessarily implied without such evidence. Nor do I read the case of *Speir* v. *Benvenuti* (197 App. Div. 209) as such a holding. The extrinsic evidence there under consideration related to another document claimed to be inconsistent with the exercise of the power of appointment, the use of which to change the meaning of the will would obviously have been a violation of substantive testamentary law. In *Maynard* v. *Maynard* (108 Misc. 362, 365), on the other hand, the court took into consideration the condition of the estate of the testator and the circumstances attendant upon the execution of the will in determining whether the power of appointment had been exercised.

Applying these principles accordingly to the first of the three divisions of the testimony of Judge Cutting above mentioned, *i. e.*, his testimony concerning the amount and location of the property owned by the testatrix and his conversations with her in respect to it, it appears that such testimony is not objectionable as extrinsic and may be admitted unless barred by sections 353 and 354 of the Civil Practice Act. That question will be considered hereafter.

The second division of Judge Cutting's testimony relates to the method of executing powers of appointment under the law of Illinois and his advice to Mrs. McCormick in that connection. It is argued on behalf of Mrs. Hubbard that this evidence is inadmissible because of the fact that the question whether Mrs. McCormick's will was effective to exercise the power of appointment is to be determined by the law of New York and not by the law of Illinois. The latter contention is undoubtedly correct, as shown by the cases heretofore cited, and I do not understand that it is questioned by the other parties. We are here concerned, however, not only with the construction of a trust deed created by a resident of New York, but also with interpretation of the will of a testatrix domiciled in Illinois, and the immediate subject of inquiry is the actual intention of the latter as expressed or necessarily implied in this will. The plaintiff claims that the evidence of the Illinois law and the witness' conversations on that subject with the testatrix throw light on her meaning as expressed by the proper interpretation of the words which she has used; and that while the effect of that meaning upon the trust fund must be determined by the law of New York, the actual discovery of the meaning itself will be aided by realization of the manner in which these words and phrases are used in the State of Illinois, the domicile of the testatrix, and her acquaintance with such use.

The distinction may seem a fine one, but it is logical and may be useful. The New York law, as already stated, does not hold that the actual intention of the testatrix in respect to this power of appointment is irrelevant or immaterial; it merely holds that an intention not to execute the power must be shown either expressly or by necessary implication from the language of the will. It does not exclude from consideration the real meaning of the language of the will, and such real meaning can be obtained from the surrounding circumstances, one of which would seem to be the customary usage of such language in the State of Illinois. Reason and common sense suggest that Mrs. McCormick meant by her words what such words customarily mean at the place of her domicile, and especially what she was told they mean by her legal adviser. Con-

sequently their meaning and her knowledge in respect to it are, in my opinion, relevant and admissible circumstances to throw light upon the interpretation of her will. (5 Wigmore on Evidence [2d ed.], § 2464.) The construction or legal effect which New York law will attribute to the interpreted will is not under consideration at the moment. " Where the inquiry is solely to ascertain the intention of the testator, from the language employed by him in the will, what the courts of the State of his domicile have said those words will mean, will control." (*Ball* v. *Phelan,* 94 Miss. 293, 341; 49 S. 956.)

" In determining the true intent and meaning of a will the court will have recourse to the circumstances of the testator and of his family and affairs, and of other facts which it can be shown will in any way aid the court in the right interpretation of a testator's will. [Authorities.] Under this rule we have no doubt that if a will executed in a foreign country contains words or phrases which have a local or domiciliary meaning different from the meaning of the same words or phrases in this State, with which the testator is shown or presumed to have been acquainted, extrinsic evidence of such domiciliary meaning may be heard to enable the court to read the will with the same light under which it was written. In this view it can make no difference how such domiciliary meaning was established. It may be by the usage or custom of merchants or traders in the place where the instrument was executed, or may be a meaning established by statute or judicial decision. But however established, the usage or law, and the meaning of the words thereunder, are proven, not to establish a rule of law binding on the court charged with the proper interpretation of the will, but simply as a fact or circumstance proven to enable the court to arrive at a correct construction under the laws of the forum." (*Peet* v. *Peet,* 229 Ill. 341, 352; 82 N. E. 376.)

Judge Cutting's qualifications to speak as an expert on Illinois law were amply proved. What is said here, however, does not render admissible his opinion as to the legal effect of Mrs. McCormick's will upon the property subject to the power of appointment, and it is also subject to the question reserved above concerning the confidential nature of his testimony.

The third division of the testimony of this witness concerns conversations with Mrs. McCormick or declarations by her, expressing directly or in effect her intention or desire not to exercise the power of appointment. This testimony is governed by other considerations. It is well settled that evidence of a testator's declarations of intention cannot be accepted in interpreting his will, even though they might logically seem helpful for that purpose,

the objection being that they are testamentary declarations themselves, invalid because not in writing and extraneous to the document. (5 Wigmore on Evidence, § 2471.) There is a well-known exception to this rule of exclusion where the will, considered in the light of other extrinsic evidence, shows what is technically known as a latent ambiguity or equivocation in respect to the identity of a beneficiary or the subject-matter of a bequest. (*Baumann* v. *Steingester*, 213 N. Y. 328; *Matter of Coughlin*, 171 App. Div. 662; 5 Wigmore on Evidence [2d ed.], § 2472.) The plaintiff seeks to take advantage of this exception by the contention that the existence of the power of appointment creates a latent ambiguity or equivocation as to the subject-matter of the testatrix's bequests, *i. e.*, as to whether they comprise merely the property that she herself owned, or whether they include also the trust property over which she had the power of appointment. In several cases directly in point, however, it has been held that such a question is not a latent ambiguity within the meaning of the doctrine under consideration, and that direct evidence of a testator's parol or extrinsic declarations cannot be received in evidence to show his intention with respect to the power. (*White* v. *Hicks*, 33 N. Y. 383; *Hogle* v. *Hogle*, 49 Hun, 313; *Emery* v. *Haven*, 67 N. H. 503; 35 A. 940. See, also, *Farnum* v. *Pennsylvania Co.*, 87 N. J. Eq. 108; 99 A. 145; affd., 87 N. J. Eq. 652; 101 A. 1053.) While some of the statements of Mrs. McCormick narrated by the witness are not precisely in the form of declarations of intention, they have that effect when taken as part of the entire conversation and are subject to the same vice. All of the testimony of Judge Cutting falling within this division will accordingly be excluded.

There remains to be considered the objection that the testimony of Judge Cutting is inadmissible because of sections 353 and 354 of the Civil Practice Act, which relate to confidential communications between attorney and client. The relationship of attorney and client existed between Judge Cutting and Mrs. McCormick. He drew the will and was one of the witnesses to its execution. In so far as the subject-matter of his testimony consists of confidential communications, it is inadmissible unless excepted from the general prohibition of these sections by the following language of section 354, viz.: " But nothing contained in this section   *   *   *   shall be construed to disqualify an attorney   *   *   *   in the probate of a will heretofore executed or offered for probate or hereafter to be executed or offered for probate   *   *   *   from becoming a witness, as to the preparation and execution   *   *   *   whether such attorney is or is not one of the subscribing or attesting witnesses thereto."

The rule prevails in many States, and generally at common law, that the obligation of secrecy with respect to a client's will imposed upon the attorney who draws the will does not continue beyond the client's lifetime, the theory being that it is the testator's intention to leave the attorney free to testify concerning the tenor and the execution of the will. (4 Wigmore on Evidence [2d ed.], § 2314.) The reasoning of this rule has been declared by the Court of Appeals to be " quite satisfactory," and although it has not been fully adopted in the present form of section 354 (*Matter of Cunnion*, 201 N. Y. 123), a striking change in this respect will be effective shortly (Laws of 1934, chap. 305).* Moreover, an unlimited exception to the rule of exclusion was at one time recognized where the attorney acted as a witness to the will at the testator's request, such a request being deemed a waiver by the testator of the confidential privilege and leaving the attorney " unrestrained by any objection which he had the power to remove " (*Matter of Coleman*, 111 N. Y. 220). The force of this decision was, however, destroyed soon afterwards by a statutory amendment which nullified all waivers except those made at the time the testimony is given (Laws of 1891, chap. 381), with the apparent result that not even an attorney-witness could testify under any circumstances until a further amendment introduced into section 354 the sentence which has been already quoted (Laws of 1892, chap. 514).

It will be noticed that the sentence quoted permits the attorney who is a subscribing witness to testify " in the probate of a will heretofore executed or offered for probate or hereafter to be executed or offered for probate  *  *  *  as to the preparation and execution." This does not permit testimony as to a prior will, similarly witnessed but revoked (*Matter of McCulloch*, 263 N. Y. 408). I do not understand that any objection is made to Judge Cutting's testimony in this action on the ground that it does not relate to the preparation and execution of the will of August 4, 1932. Objection is made, however, that the testimony is not offered " in the probate " of that will; that the probate of the will took place previously in Chicago and that the only matter here at issue relates to its interpretation or construction; and that in such a proceeding the attorney who drew the will is not relieved of the obligation of secrecy.

The term " probate " is commonly used with reference to the formal establishment of a document as the last will and testament of the testator as a basis for the distribution of his property and the issuance of letters testamentary to the persons named therein as executors. Probate, in this sense, usually takes place at the

---

* See, also, amendments by Laws of 1935, chap. 200; Laws of 1936, chaps. 139, 493.

domicile of the testator and seldom is there occasion for its repetition elsewhere, the filing in other jurisdictions of a copy of the original probate proceedings being usually sufficient for all purposes. The term " probate," however, also has a broader meaning, including all proceedings incident to the administration and sett'ement of estates and perhaps also the establishment of the meaning of a will as well as its execution (50 C. J. 423). Etymologically, of course, the word is equivalent to the term " proof." It may apply to deeds as well as wills ( *United States* v. *Hiawassee Lumber Co.,* 238 U. S. 553).

Several cases involving the admissibility of evidence of an attorney-witness in a proceeding, other than its admission to probate, have been before the Court of Appeals, but in none of them has that court expressed an opinion on the competency of the witness. In *Dwight* v. *Fancher* (245 N. Y. 71) the court expressly refused to pass upon the question. *Matter of McGowan* (254 N. Y. 513) was an affirmance without opinion of a decision of the Appellate Division (228 App. Div. 779), itself affirming without opinion a decision of the Surrogate's Court of Kings county in which certain testimony of the attorney-witness was received by the surrogate, although other testimony of the same character from the same witness was stricken out on objection. The testimony retained had been given without objection, but on cross-examination, and it is now argued, on one side, that the affirmance by the Court of Appeals is in effect an affirmation of the admissibility of this kind of testimony, and on the other, that the result was reached in all courts without any dependence upon the attorney's testimony. The case certainly throws no strong light upon the question.

In *Matter of Coughlin* (171 App. Div. 662; affd., 220 N. Y. 681) the attorney who drew the will and was a witness to it was allowed to testify as to. confidential communications on the question of interpreting the will because of a latent ambiguity. This question of construction was raised by one of the parties upon the probate of the will, as authorized by section 145 of the Surrogate's Court Act. The opinion of the Appellate Division contains a sentence to the effect that the testimony of the attorney was not privileged, being given by a subscribing witness, but it is now said here that this question was not argued in the briefs, either before the Appellate Division or the Court of Appeals, the sole contention relating to the adequacy of the testimony even if given by a layman.

In *Baumann* v. *Steingester* (213 N. Y. 328) the Court of Appeals held that testimony of an attorney-witness was improperly rejected in an action for the construction of the will, but placed its decision on the ground that the communications were not confidential,

having been made at a time when a third party was present. It does not seem to have been contended that the testimony was admissible in any event as given " on the probate " of the will.

No argument has been advanced assigning any reason of logic or policy to sustain the narrow construction of the word " probate " in this connection. If the attorney is permitted to disclose the testator's confidential transactions and communications for the purpose of showing that the will was duly executed, there appears no reason for suppressing his knowledge which will throw light on the testator's meaning. The persuasive views in regard to the testator's probable intention expressed by the court in *Matter of Coleman (supra)*, as well as the " satisfactory reasoning " of the common-law principle as approved in *Matter of Cunnion (supra)*, are equally applicable to the present situation. Especially is there little reason for distinguishing between admissibility for the purpose of construction when the question is raised in the probate proceeding and when it is raised in some other form of action.

If it be necessary to give a narrow construction to the word " probate " as meaning only a proceeding in which the will is originally established, it may be considered that the present proceeding is such an original proceeding, at least so far as relates to the execution of the power of appointment. Neither the probate nor the failure of probate of the will at the domicile of the testatrix is conclusive evidence upon the issue here as to whether the donee of the power executed an instrument to carry it into effect. (*Blount v. Walker*, 134 U. S. 607; *Matter of Harriman*, 124 Misc. 320; affd., 217 App. Div. 733.) While an exemplified copy of the probate at the domicile is sufficient evidence of the execution of the instrument (*Matter of Marsland*, 142 Misc. 230), it is not the only evidence (*Matter of Harriman, supra*), and the testimony of the subscribing witnesses may be received, although perhaps only cumulative where an exemplified copy has been already admitted. There is nothing in *Matter of Harriman* to suggest that in order to show the execution of the power of appointment the will can be established only in the Surrogate's Court. As a foreign will it could apparently be established in the Supreme Court under section 200 of the Decedent Estate Law. Such a course was followed some years ago in a case with which I am familiar.

Accordingly, I conclude that the testimony of Judge Cutting is not prohibited by sections 353 and 354 of the Civil Practice Act.

Decision was also reserved on the plaintiff's offer in evidence of a prior will of testatrix, executed in 1931, which was marked as Plaintiff's Exhibit F-2 for identification. (See record, p. 160.) Neither Mrs. McCormick's intention in 1931 with respect to the

power of appointment, nor the dispositions which she made at that time, are relevant to the meaning of the will which she executed in 1932 (*Speir* v. *Benvenuti*, 197 App. Div. 209, 212), but her knowledge of the original creation of the power and of the existence of a question as to its continuance in effect are circumstances of the character which may be proved by extrinsic evidence under the principles heretofore discussed. That knowledge of the existence of the power might have an important bearing was recognized in *Lockwood* v. *Mildeberger* (*supra* at pp. 187, 188). The document will, therefore, be received in evidence for this purpose only, and not otherwise.

The present rulings are rulings only upon the admissibility of Judge Cutting's testimony and are not to be taken as any indication of conclusions of fact or law to be based thereon. The fundamental issue remains as it was, namely, whether the will of Mrs. McCormick, when its real meaning is understood from its words read in the light of surrounding circumstances, shows expressly or by necessary implication an intention not to execute the power of appointment.

The principles of these rulings will now be applied specifically to the objections noted in the record. The sustaining of an objection to a question will be deemed an exclusion of the answer.

(Specific rulings omitted.)